IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

BRIAN SCOTT FRIZZELL            )
                               )
v.                             )        No. 2:11-0052
                               )
MICHAEL J. ASTRUE,             )
        Commissioner of Social Security    )


To: The Honorable Thomas A. Wiseman, Jr., Senior District Judge


## REPORT AND RECOMMENDATION

The plaintiff filed this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the

final decision of the Commissioner of Social Security ("Commissioner") denying the plaintiff's

claims for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"), as

provided by the Social Security Act ("the Act").

Upon review of the Administrative Record as a whole, the Court finds that the

Commissioner's determination that the plaintiff is not disabled under the Act is supported by

substantial evidence in the record as required by 42 U.S.C. § 405(g), and that the plaintiff's motion

for judgment on the administrative record (Docket Entry No. 6) should be denied.


## I. INTRODUCTION

The plaintiff filed applications for SSI and DIB on October 15, 2008, with a protected filing

date of October 3, 2008, and alleging a disability onset date of December 15, 2000, due to right arm

cramps, vision problems, and back and leg pain. (Tr. 108-13, 143, 148.)  His applications were

denied initially and upon reconsideration. (Tr. 66-73.)  A hearing was held before Administrative Law Judge ("ALJ") Frank Letchworth on May 10, 2010. (Tr. 21-56.)  The ALJ delivered an unfavorable decision July 9, 2010 (tr. 8-17), and the plaintiff sought review by the Appeals Council. (Tr. 107.)  On April 7, 2011, the Appeals Council denied the plaintiff's request for review (tr. 1-3), and the ALJ's decision became the final decision of the Commissioner.

## II. BACKGROUND

The plaintiff was born on October 30, 1969, and was 30 years old as of December 15, 2000, his alleged onset date. (Tr. 63.)  The plaintiff completed eleventh grade and had worked as a core drilling assistant, robotic technician, and cab driver. (Tr. 149, 166.)

### A. Chronological Background: Procedural Developments and Medical Records

On April 23, 2002, the plaintiff presented to the emergency room at Cookeville Regional Medical Center ("CRMC") with complaints of a left eye injury and he was diagnosed with a corneal abrasion. (Tr. 211-12.)  On May 25, 2002, the plaintiff returned to the emergency room at CRMC with a right eye injury suffered during a fishing accident and was transferred to the emergency room at Vanderbilt University Hospital ("VUH") for further examination. (Tr. 201, 210-11.)  Dr. Joan Collier, an examining physician at VUH, diagnosed him with a "[r]ight eye traumatic injury with hyphema" and prescribed Pred Forte and antibiotic eye drops.[1]  On November 11, 2002, the plaintiff

---

[1] Pred Forte is a corticosteroid anti-inflammatory eye drop. Saunders Pharmaceutical Word Book 575 (2009) ("Saunders").

presented to the emergency room at CRMC with mild to moderate right hand pain and he was diagnosed with a right hand fracture. (Tr. 207-08.)

The record reflects no further medical treatment until February 13, 2007, when the plaintiff went to the CRMC emergency with mild right foot pain after he had "dropped a [unintelligible] app[roximately] 4-5 feet onto r[ight] foot," and he was diagnosed with a right foot laceration. (Tr. 205-06.)

On December 10, 2008, the plaintiff presented to Dr. Jerry Lee Surber, a consultative Disability Determination Services ("DDS") physician, for a disability evaluation. (Tr. 214-17.) The plaintiff related that he had shortness of breath; pain in his neck, shoulder, lower back, right toe, and both wrists; and "numbness, burning, and tingling in his hands and feet." Dr. Surber noted that the plaintiff had "full and unlimited mobility in his right and left shoulders, elbows, hips, knees, ankles, wrists, hands, and fingers including both thumbs;" "had no gross asymmetry in any of his major muscle groups nor any evidence of muscle wasting;" "had bilaterally equal upper and lower limb strengths and grip strengths at 5/5;" and had a limping gait but did not use an assistive device. (Tr. 216.) He diagnosed the plaintiff with Chronic Obstructive Pulmonary Disease ("COPD"), hypertension, "[p]ossible atherosclerotic coronary vascular disease," and "visual acuity . . . [of] 20/100 in his right eye compared to 20/20 in his left eye without glasses," and noted that "[h]e had no specific limitations regarding the functional mobility" of his neck, shoulder, or lower back. (Tr. 217.) Dr. Surber also opined that the plaintiff "would be able to occasionally lift or carry at least 10 to 45 pounds during up to one-third to one-half of an 8-hour workday;" could use his left hand for lifting and carrying; and "would be able to stand or walk with normal breaks for up to 2 to 4 hours in an 8-hour day or sit with normal breaks for up to 6 to 8 hours in an 8-hour work day." *Id.*

On December 26, 2008, Dr. John L. Humphreys, a nonexamining DDS consultative physician, reviewed the plaintiff's medical records and completed a "DDS Medical Consultant Analysis" ("DDS Analysis"). (Tr. 218-21.) He opined that the plaintiff's physical impairments were "not severe, singly or combined." (Tr. 218-21.) On January 5, 2009, Dr. Lina B. Caldwell, a nonexamining DDS consultative physician, reviewed the plaintiff's medical records and also completed a DDS Analysis. (Tr. 222-25.) She concluded that the plaintiff had "[n]o medically determinable physical impairment." (Tr. 222.)

Between June of 2009, and March of 2010, the plaintiff presented to Dr. Angela Moss, an examining physician, on five occasions with complaints of insomnia, and knee, neck, leg, and lower back pain. (Tr. 240-49.) Dr. Moss diagnosed the plaintiff with insomnia and knee, shoulder, lower back, and thoracic pain, and prescribed Ibuprofen, Tylenol, Benadryl, Robaxin, Zanaflex, and Lortab.[2] Id. On March 26, 2010, an MRI of the plaintiff's thoracic spine revealed an "[o]ld compression fracture of T5" and "[p]robable bone endema at T1; probably related to trauma." (Tr. 250.) On April 26, 2010, an MRI of the plaintiff's lower back showed "[f]acet disease at 4-5 and 5-1" and "mild bulging of the disk at the 4-5 level" but "reveal[ed] no fracture or dislocation" and that "[t]he disk space appears normal." (Tr. 251.)

On April 27, 2010, the plaintiff deposed Dr. Moss and she testified that she treated the plaintiff five times and "authorize[d]" MRIs of his thoracic spine, which revealed "a compression fracture at T-5" and a "bone endema at T-1," and of his lumbar spine, which showed "facet disease noted at L4-5 and 5-1 and a bulging disc at L4-5." (Tr. 231, 235.) Dr. Moss related that the plaintiff

_____

[2] Benadryl is an antihistamine, decongestant, and sleep aid; Robaxin and Zanaflex are skeletal muscle relaxants; and Lortab is a pain reliever with the generic name of hydrocodone. Saunders Pharmaceutical Word Book 86-87, 415, 619, 773 (2009) ("Saunders").

had a decreased range of motion in his thoracic spine, chronic joint pain with stiffness, degenerative disc disease, and pain in both shoulders that affects his ability to "perform fine and gross movements," push, pull, grasp, and "fingering to carry out daily activities of living." (Tr. 232-34.) Dr. Moss testified that the plaintiff's right shoulder impairment would affect his ability to file papers in a cabinet above waist level since he is right handed. (Tr. 234.)

Dr. Moss related that the plaintiff was prescribed Lortab and Baclofen[3] and "maybe had a rotator cuff tear or something of that nature to the right shoulder," and that the objective medical evidence "confirm[ed] the severity of his alleged pain" and could be "reasonably expected to produce [his] alleged disabling pain." (Tr. 235-36.) She then testified that "the clinical and diagnostic testing [of the plaintiff's] thoracic spine" did meet or equal listing 1.02. (Tr. 237.)

## B. Hearing Testimony

At the hearing before the ALJ, the plaintiff was represented by counsel, and the plaintiff and Edward Smith, a vocational expert ("VE"), testified. (Tr. 21-56.) The plaintiff testified that he completed the eleventh grade and worked as a cab driver, core driller, robot technician, pipe fitter helper, and pipe expediter. (Tr. 28-32.) He related that he has difficulty driving at night because of a right eye impairment, and that he has severe back pain but did not seek treatment for his back pain for five to six years.[3] (Tr. 33-35, 38-39.) The plaintiff testified that he has pain in the upper middle

---

[3] Baclofen is a muscle relaxant and an antispasticity agent. Saunders at 77.

[3] The plaintiff testified that he saw Dr. Robert Ladd in 2003 or 2004, for his back pain, but did not again seek medical treatment for that pain until he presented to Dr. Moss in 2009. (Tr. 34-35.) The ALJ noted that the record does not contain any treatment notes from Dr. Ladd and that the Social Security Administration has been unable to locate Dr. Ladd (tr. 35, 38), presumably because, as the plaintiff testified, he lost his license to practice medicine. (Tr. 34.)

part of his back and in his knees, that lifting his right arm shoulder level and breathing exacerbates his back pain, that he uses his left arm "for most of [his] lifting," and that he spends most of his day sitting. (Tr. 40-41, 43-44, 46.) The plaintiff also testified that he collects cans supplied by his friends on a monthly basis and that he is able to load a bag with cans with his left arm. (Tr. 35, 42-43

The plaintiff related that he is blind in his right eye after he was struck by a fishing lure and that his blindness causes dizziness and affects his balance, resulting in "several little slip and fall accidents." (Tr. 47.) He explained that after he injured his right eye, he was able to keep working at his core drilling jobs and robot technician job because his friends "helped [him] a lot." (Tr. 49-50.)

The VE, consistent with the Dictionary of Occupational Titles, classified the plaintiff's past relevant work as a core driller as heavy and unskilled and as a robotic technician and cab driver as medium and semiskilled. (Tr. 51.) The ALJ asked the VE what type of work the plaintiff could perform if he were limited to light exertion, could stand/walk for four hours in an eight hour day "in one hour increments," and had no sitting restriction, and the VE replied that the plaintiff could work as a security guard, sorter, and cashier. (Tr. 52.) Next, the ALJ asked the VE what type of work the plaintiff could perform if he were precluded from working any job "in which binocular vision or peripheral vision were a key element," and the VE answered that he could work as a cashier and security guard. (Tr. 53.)

The ALJ then asked the VE what type of work the plaintiff could perform if he could not make any overhead motion, reach, push, or pull over shoulder level with his right arm, and the VE replied that he could work as a security guard, parking lot attendant, laundry folder, and as an office helper. (Tr. 53-54.) The ALJ also asked the VE if any of his answers to the previous hypotheticals would be affected if the plaintiff could climb, crawl, stoop, bend, and crouch no more than

occasionally, and the VE replied that those limitations would not affect his previous answers. (Tr. 54.) Finally, the ALJ asked the VE what type of work the plaintiff could perform if he "incorporate[d] every functional limitation [the plaintiff] mentioned in his testimony," and the VE answered that the plaintiff would be precluded from working. (Tr. 55.)

## III. THE ALJ'S FINDINGS

The ALJ issued an unfavorable decision on July 9, 2010. (Tr. 8-17.) Based on the record, the ALJ made the following findings:

1.      The claimant meets the insured status requirements of the Social Security Act through June 30, 2012.

2.      The claimant has not engaged in substantial gainful activity since December 15, 2000, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

* * *

3.      The claimant has alleged the following severe impairments: vision problems, right eye; knee problem, back disorder, and bilateral carpal tunnel syndrome[4] (20 CFR 404.1520(c) and 416.920(c)).

* * *

4.      The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

* * *

5.      After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined

---

[4] The plaintiff himself notes that there is "very little evidence" of carpal tunnel syndrome. Docket Entry No. 7, at 3.

in 20 CFR 404.1567(b) and 416.967(b) except standing and walking 4 hours out of an 8 hour workday; unlimited ability to sit; no binocular or peripheral vision, right sided; no overhead motion or reaching with dominate [sic] right upper extremity above shoulder level, and no more than occasional postural activities such as balancing, stooping, kneeling, crouching, crawling, or climbing such as ramps, stairs, ladders, ropes, and scaffolds.

\* \* \*

6.    The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

\* \* \*

7.    The claimant was born on October 30, 1969 and was 31 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.    The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

\* \* \*

11.   The claimant has not been under a disability, as defined in the Social Security Act, from December 15, 2000, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

# IV. DISCUSSION

## A. Standard of Review

The determination of disability under the Act is an administrative decision, and the only questions before this Court are whether the decision of the Commissioner is supported by substantial evidence and whether the Commissioner employed the proper legal standards in reaching his conclusion. 42 U.S.C. § 405(g). *See Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed. 2d 842 (1971) (adopting and defining substantial evidence standard in context of Social Security cases); *Kyle v. Comm'r Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010). The Commissioner's decision must be affirmed if it is supported by substantial evidence, "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir.1997)); *Jones* v. *Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). Substantial evidence is defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); *Le Master v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976) (quoting Sixth Circuit opinions adopting language substantially similar to that in *Richardson*).

A reviewing court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *See, e.g., Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citing *Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The Court must accept the ALJ's explicit findings and determination unless the record as a whole is without substantial evidence to support

the ALJ's determination. 42 U.S.C. § 405(g). *See, e.g., Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984).

The Commissioner must employ a five-step evaluation process in determining the issue of disability. *See, e.g., Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001) (citing *Abbot v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990)). The original burden of establishing disability is on the plaintiff, and impairments must be demonstrated by medically acceptable clinical and laboratory diagnostic techniques. *See* 42 U.S.C. § 1382c(a)(3)(D); 20 C.F.R. §§ 404.1512(a), (c), 404.1513(d). First, the plaintiff must show that he is not engaged in "substantial gainful activity" at the time he seeks disability benefits. *Id.* (citing 20 C.F.R. § 404.1520(b); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007). A plaintiff who is performing substantial gainful activity is not disabled no matter how severe the plaintiff's medical condition may be. *See, e.g., Dinkel v. Sec'y of Health & Human Servs.*, 910 F.2d 315, 318 (6th Cir. 1990).

Second, the plaintiff must show that he suffers from a severe impairment that meets the twelve month durational requirement. 20 C.F.R. § 404.1520(a)(4)(ii). *See Edwards v. Comm'r of Soc. Sec.*, 113 Fed. Appx. 83, 85 (6th Cir. Sept. 24, 2004). A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." *Barnhart v. Thomas*, 540 U.S. 20, 24, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003) (citing 20 C.F.R. § 404.1520(c)). Basic work activities are "the abilities and aptitudes necessary to do most jobs," such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; [c]apacities for seeing, hearing, and speaking; [u]nderstanding, carrying out, and remembering simple instructions; [u]se of judgment; [r]esponding appropriately to supervision, co-workers and usual work situations; and [d]ealing with changes in a routine work setting." 20 C.F.R. § 404.1521(b). The Commissioner is

required to consider the combined effects of impairments that individually are not severe but cumulatively may constitute a severe impairment. 42 U.S.C. § 423(d)(2)(B); *Foster v. Bowen*, 853 F.2d 483, 490 (6th Cir. 1988).

Third, if the plaintiff is not engaging in substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, the plaintiff is presumed disabled without further inquiry, regardless of age, education or work experience. *Id.* (citing 20 C.F.R. § 404.1520(d)). The plaintiff may establish that he meets or equals a listed impairment, and that the impairment has lasted or is expected to last for at least twelve months or result in death. *See Listenbee v. Sec'y of Health & Human Servs.*, 846 F.2d 345, 350 (6th Cir. 1988). The plaintiff is not required to show the existence of a listed impairment in order to be found disabled, but such a showing results in an automatic finding of disability. *See Blankenship v. Bowen*, 874 F.2d 1116, 1122 (6th Cir. 1989).

Fourth, if the plaintiff's impairment does not prevent him from doing his past relevant work, he is not disabled. *Id.* The plaintiff has the burden of proving inability to perform past relevant work, or proving that a particular past job should not be considered relevant. *Cruse*, 502 F.3d at 539; *Jones*, 336 F.3d at 474 ("Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work . . . ."); *Smith v. Sec'y of Health & Human Servs.*, 893 F.2d 106, 109 (6th Cir. 1989). If the plaintiff fails to carry this burden, he must be denied disability benefits.

Once the plaintiff establishes a *prima facie* case that he is unable to perform his prior relevant employment, the burden shifts in step five to the Commissioner to show that the plaintiff can

perform other substantial gainful employment, and that such employment exists in significant numbers in the national economy. *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). To rebut a *prima facie* case, the Commissioner must come forward with proof of the existence of other jobs a plaintiff can perform. *Longworth*, 402 F.3d at 595. *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 528 (6th Cir. 1981), *cert. denied*, 461 U.S. 957, 103 S.Ct. 2428, 77 L.Ed.2d 1315 (1983) (upholding the validity of the medical-vocational guidelines grid as a means for the Commissioner of carrying his burden under appropriate circumstances). It remains the plaintiff's burden to prove the extent of his functional limitations. *Her*, 203 F.3d at 391. Even if the plaintiff's impairment does prevent him from doing his past relevant work, if other work exists in significant numbers in the national economy that the plaintiff can perform, he is not disabled. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009); *Her*, 203 F.3d at 391. *See also Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028-29 (6th Cir. 1990); *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 88-89 (6th Cir. 1985); *Mowery v. Heckler*, 771 F.2d 966, 969-70 (6th Cir. 1985).

If the question of disability can be resolved at any point in the sequential evaluation process, the claim is not reviewed further. 20 C.F.R. § 404.1520(a)(4). *See also Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (holding that resolution of plaintiff's claim at step two of the evaluative process is appropriate in some circumstances).

## B. The Five-Step Inquiry

In the instant case, the ALJ decided the plaintiff's claim at step five of the five step process. (Tr. 16.) At step one, the ALJ found that the plaintiff demonstrated that he had not engaged in

substantial gainful activity since December 15, 2000, the alleged disability onset date. (Tr. 10.) At step two, the ALJ determined that the plaintiff's right eye vision problems, knee problem, back impairment, and bilateral carpal tunnel syndrome were severe impairments. *Id.* At step three, the ALJ determined that the plaintiff's impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, and that he had the residual functional capacity ("RFC") to perform light work

> except standing and walking 4 hours out of an 8 hour workday; unlimited ability to sit; no binocular or peripheral vision, right sided; no overhead motion or reaching with dominate [sic] right upper extremity above shoulder level, and no more than occasional postural activities such as balancing, stooping, kneeling, crouching, crawling, or climbing such as ramps, stairs, ladders, ropes, and scaffolds.

(Tr. 13.) At step four, the ALJ concluded that he could not perform his past relevant work. (Tr. 15.) At step five, the ALJ found that the plaintiff's RFC allowed him to perform work as a security guard, cashier, parking lot attendant, laundry folder, and office helper. (Tr. 16.)

## C. The Plaintiff's Assertions of Error

The plaintiff argues that the ALJ failed to provide good reasons for rejecting the opinions of his treating physician, Dr. Moss; erred in concluding that he did not meet Listing 1.02B; and failed to properly evaluate his subjective complaints of pain. Docket Entry No. 7, at 6-16.

### 1. The ALJ's failure to properly assess the medical findings of the plaintiff's treating physician is harmless error.

The plaintiff contends that "the ALJ failed to provide good reasons for rejecting the opinions of Dr. Moss regarding [the plaintiff's] abilities to perform fine manipulative tasks." Docket Entry

No. 7, at 7. Given the regularity with which Dr. Moss examined the plaintiff (tr. 240-49), she is classified as treating source under 20 C.F.R. §§ 404.1502, 416.902.[5]

Generally, an ALJ is required to give "controlling weight" to the medical opinion of a treating physician, as compared to the medical opinion of a non-treating physician, if the opinion of the treating source is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (quoted in *Tilley v. Comm'r of Soc. Sec.*, 394 Fed. Appx. 216, 222 (6th Cir. Aug. 31, 2010), and *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009)). This is commonly known as the treating physician rule. *See* Soc. Sec. Rul. 96-2p, 1996 WL 374188 (July 2, 1996); *Wilson*, 378 F.3d at 544 (6th Cir. 2004).

The ALJ did not assign controlling weight to Dr. Moss's findings. (Tr. 14.) Even if a treating source's medical opinion is not given controlling weight, it is "still entitled to deference and *must be weighed using all of the factors provided in 20 C.F.R. 404.1527 . . . .*" *Fisk v. Astrue*, 253 Fed. Appx. 580, 585 (6th Cir. Nov. 9, 2007) (quoting Soc. Sec Rul. 96-2p, 1996 WL 374188, at *4) (emphasis in original). The ALJ must consider

_____

[5] A treating source is the plaintiff's
own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you. Generally, we will consider that you have an ongoing treatment relationship with an acceptable medical source when the medical evidence establishes that you see, or have seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s). We may consider an acceptable medical source who has treated or evaluated you only a few times or only after long intervals (e.g., twice a year) to be your treating source if the nature and frequency of the treatment or evaluation is typical for your condition(s).

20 C.F.R. §§ 404.1502, 416.902.

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion with respect to relevant evidence such as medical signs and laboratory findings; (4) the consistency of the opinion with the record as a whole; (5) the specialization of the physician rendering the opinion; and (6) any other factor raised by the applicant.

*McGrew v. Comm'r of Soc. Sec.*, 343 Fed. Appx. 26, 30 (6th Cir. Aug. 19, 2009) (citing *Wilson*, 378 F.3d at 544); *Meece v. Barnhart*, 192 Fed. Appx. 456, 461 (6th Cir. Aug. 8, 2006) (quoting 20 C.F.R. § 404.1527(d)(2)-(6)).  The ALJ must also provide "good reasons" for the resulting weight given to the treating source. Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (citing 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2)); *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011); *Brock v. Comm'r of Soc. Sec.*, 2010 WL 784907, at *2 (6th Cir. Mar. 8, 2010).  The "good reasons" must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight," *Cole*, 661 F.3d at 937 (quoting Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5), and so that the plaintiff understands the disposition of his case. *Wilson*, 378 F.3d at 544 (citing *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)).

The Sixth Circuit has plainly held that a reversal of a denial of benefits and remand are warranted, even if the record may contain substantial evidence that supports the Commissioner's decision, when the ALJ fails to provide good reasons for discounting the medical opinion of the plaintiff's treating physician. *Friend v. Comm'r of Soc. Sec.*, 375 Fed. Appx. 543, 551 (6th Cir. Apr. 28, 2010) (citing *Wilson*, 378 F.3d at 544).  The failure to follow "the procedural requirement 'of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where

the conclusion of the ALJ may be justified based upon the record.'" *Friend*, 375 Fed. Appx. at 551

(quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir.2007)). *See also Wilson*, 378

F.3d at 546 ("A court cannot excuse the denial of a mandatory procedural protection simply

because . . . there is sufficient evidence in the record for the ALJ to discount the treating source's

opinion and, thus, a different outcome on remand is unlikely.").

However, the Sixth Circuit has also determined that there are circumstances when

noncompliance with the good reasons requirement is "harmless error," if: "'(1) a treating source's

opinion is so patently deficient that the Commissioner could not possibly credit it;' (2) 'if the

Commissioner adopts the opinion of the treating source or makes findings consistent with the

opinion;' or (3) 'where the Commissioner has met the goal of § 1527(d)(2)-the provision of the

procedural safeguard of reasons-even though she has not complied with the terms of the regulation.'"

*Friend*, 375 Fed. Appx. at 551 (quoting *Wilson*, 378 F.3d at 547). Should the third situation occur,

"the procedural protections at the heart of the rule may be met when the 'supportability' of a doctor's

opinion, or its consistency with other evidence in the record, is indirectly attacked via an ALJ's

analysis of a physician's other opinions or his analysis of the claimant's ailments." *Friend*, 375 Fed.

Appx. at 551 (citing *Nelson v. Comm'r of Soc. Sec.*, 195 Fed. Appx. 462, 470-72 (6th Cir. 2006);

*Hall v. Comm'r of Soc. Sec.*, 148 Fed. Appx. 456, 464 (6th Cir. 2006)). The function of the good

reason requirement is to provide clarity and transparency to the reviewing body and, more

importantly, to the plaintiff, but it is not a "procrustean bed" that requires "an arbitrary conformity

at all times." *Friend*, 375 Fed. Appx. at 551.

In this case, the ALJ noted that

[t]he undersigned gives the claimant some benefit of doubt since recent diagnostic findings shows [sic] some mild findings regarding his lumbar spine, but not to the extent of the treating physician, Dr. Moss. The opinion of a treating physician must ordinarily be given substantial or considerable weight unless good cause is shown to the contrary. A treating physician's medical opinion, on the issue of the nature and severity of an impairment, is entitled to special significance; and, when supported by objective medical evidence of record, entitled to controlling weight (SSR 96-2p). On the other hand, statements that a claimant is "disabled," "unable to work," can or cannot perform a past job, meets a Listing or the like are not medical opinions but are administrative findings dispositive of a case, which require familiarity with the Regulations and legal standards set forth therein. Such issues are reserved to the Commissioner, who cannot abdicate his statutory responsibility to determine the ultimate issue of disability. Opinions on issues reserved to the Commissioner can never be entitled to controlling weight, but must be carefully considered to determine the extent to which they are supported by the record as a whole or contradicted by persuasive evidence.

In sum, the above residual functional capacity assessment is supported by the diagnostic imaging of only mild objective findings regarding his back. Further, his daily activities in collecting cans appears to require exertional activities even though he reported that his friends collect cans for him. He had no medical treatment at all 2004 until 2009, yet had relatively good jobs.

(Tr. 14-15) (Internal citations omitted.)

The ALJ failed to assign a specific amount of weight to Dr. Moss's medical findings, to comply with the good reasons requirement, or to address Dr. Moss's testimony that the plaintiff is not able to perform fine and gross movements, such as pushing, pulling, grasping, and fingering due to his right shoulder pain.[6] (Tr. 233-34.) However, his noncompliance is harmless error since he indirectly attacked the supportability of Dr. Moss's conclusions by analyzing the plaintiff's ailments, concluding that the "diagnostic imaging" of his back revealed only "mild objective findings," and

---

[6] Although the ALJ skirted close to assigning good reasons for discrediting Dr. Marsh's medical opinions when he noted contrary diagnostic findings, the ALJ simply did not go far enough. The fact that Dr. Moss provided testimony on the ultimate issues to be determined by the Commissioner does not in and of itself, serve as a "good reason" to disregard her other medical opinions.

noting that he was able to collect cans and had "no medical treatment" from 2004 to 2009. (Tr. 15.) First, the plaintiff presented to Dr. Moss on five occasions between June of 2009, and March of 2010, and she diagnosed him with insomnia and knee, shoulder, lower back, and thoracic pain, and prescribed Ibuprofen, Tylenol, Benadryl, Robaxin, Zanaflex, and Lortab. (Tr. 240-49.)  MRIs in March and April of 2010, of the plaintiff's thoracic spine revealed an "[o]ld compression fracture of T5" and "[p]robable bone endema at T1; probably related to trauma," and of his lower back showed "[f]acet disease at 4-5 and 5-1" and "mild bulging of the disk at the 4-5 level" but "reveal[ed] no fracture or dislocation" and that "[t]he disk space appears normal." (Tr. 250-51.) Neither Dr. Moss's treatment notes nor the objective medical tests indicate that the plaintiff's back or shoulder impairment is debilitating.

The plaintiff defines the inability to perform fine and gross movements as not necessarily limited "to the inability to prepare a simple meal and feed oneself, the inability to take care of his personal hygiene, [or] the inability to sort and handle papers or files," and notes that Dr. Moss determined that the plaintiff's ability to sort, handle, or file papers or place files in a cabinet at or above waist level would be affected. Docket Entry No. 7, at 13; Tr. 234.  Yet the plaintiff testified that he collects cans by either putting the cans in bags himself or by having people save and put cans in bags for him (tr. 42-43), and that the "pulling sensation" starts in his back when he lifts his right arm up to "just about shoulder level." (Tr. 41.) The ability to lift a can and place it in a bag appears comparable in level of difficulty to the sorting, handling, or filing papers, and the ALJ even accounted for the plaintiff's inability to raise his right arm above shoulder level in his RFC determination. (Tr. 13.)

Finally, the record medical evidence indicates that between 2003 and 2009, the plaintiff sought medical treatment on only one occasion and that was for a right foot laceration. (Tr. 205-06.) The plaintiff's lack of medical treatment for nearly a six year period undercuts the severity of the limitations that Dr. Moss assigned to him. *See* tr. 231-35. In sum, the ALJ failed to assign a specific amount of weight to Dr. Moss's medical findings, to comply with the good reasons requirement, and to address Dr. Moss's testimony, but he satisfied the third prong of *Wilson's* harmless error provision since he indirectly attacked the supportability of Dr. Moss's conclusions by analyzing the plaintiff's impairments, concluding that the "diagnostic imaging" of his back revealed only "mild objective findings," and noting that he was able to collect cans and that he had "no medical treatment" from 2004 to 2009. (Tr. 15.)

### 2. The ALJ correctly determined that the plaintiff did not meet the requirements of Listing 1.02.

The plaintiff argues that injuries to both of his shoulders and to his lower back satisfies Listing 1.02B. Docket Entry No. 7, at 13-14. Specifically, the plaintiff contends that his shoulder injuries "result in an inability to perform fine and gross movements such as pushing, pulling, and grasping."

"'[T]he burden of proof lies with the [plaintiff] at steps one through four of the [sequential disability benefits analysis],' including proving presumptive disability by meeting or exceeding a Medical Listing at step three." *Little v. Astrue*, 2008 WL 3849937, at *4 (E.D.Ky. Aug. 15, 2008) (quoting *Her*, 203 F.3d at 391). Thus, the plaintiff "'bears the burden of proof at Step Three to demonstrate that he has or equals an impairment listed in 20 C.F.R. part 404, subpart P, appendix 1.'" *Little*, 2008 WL 3849937, at *4 (quoting *Arnold v. Comm'r of Soc. Sec.*, 238 F.3d 419 (table),

2000 WL 1909386, at *2 (6th Cir. Dec. 27, 2000)).  The plaintiff's impairment must meet all of the listing's specified medical criteria and "[a]n impairment that meets only some of those criteria, no matter how severely, does not qualify." *Sullivan*, 493 U.S. at 530-532 (1990).  If the plaintiff does demonstrate that his impairment meets or equals a listed impairment, then the ALJ "'must find the [plaintiff] disabled.'" *Little*, 2008 WL 3849937, at *4 (quoting *Buress v. Sec'y of Health & Human Servs.*, 835 F.2d 139, 140 (6th Cir.1987)).

Listing 1.02 provides that disability caused by major joint dysfunction is

[c]haracterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:

A. Involvement of one major peripheral weight-bearing joint (*i.e.*, hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b; or

B. Involvement of one major peripheral joint in each upper extremity (*i.e.*, shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.02.

The Regulations define the "[i]nability to perform fine and gross movements effectively" as

an extreme loss of function of both upper extremities; *i.e.*, an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. To use their upper extremities effectively, individuals must be capable of sustaining such functions as reaching, pushing, pulling, grasping, and fingering to be able to carry out activities of daily living. Therefore, examples of inability to perform fine and gross movements effectively include, but are not limited to, the inability to prepare a simple meal and feed oneself, the inability to take care of personal hygiene, the inability to sort and handle papers or files, and the inability to place files in a file cabinet at or above waist level.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00B2c.

To meet Listing 1.02B, the plaintiff must show that his upper extremity injuries to both shoulders resulted in an extreme loss of function, preventing him from effectively performing fine and gross movements as defined in 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00B2c. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.02B. The plaintiff's longitudinal medical history of left and right shoulder pain is, at best, sparse. The record shows that on December 10, 2008, the plaintiff presented to Dr. Surber with complaints of shoulder pain, but Dr. Surber opined that he had "full and unlimited mobility in his right and left shoulders, . . . hands, and fingers including both thumbs;" "had no gross asymmetry in any of his major muscle groups nor any evidence of muscle wasting;" and "had bilaterally equal upper and lower limb strengths and grip strengths at 5/5." (Tr. 214-17.) Dr. Surber noted that "[h]e had no specific limitations regarding the functional mobility" of his neck, shoulder, or lower back, and he concluded that the plaintiff "would be able to occasionally lift or carry at least 10 to 45 pounds during up to one-third to one-half of an 8-hour workday;" could use his left hand for lifting and carrying; and "would be able to stand or walk with normal breaks for up to 2 to 4 hours in an 8-hour day or sit with normal breaks for up to 6 to 8 hours in an 8-hour workday. *Id.*

Between June of 2009, and March of 2010, the plaintiff presented to Dr. Moss on several occasions and she diagnosed him with shoulder pain but her treatment notes provide minimal insight into the severity of his shoulder impairment, she did not assign any functional mobility restrictions for his upper extremities, and she did not refer him to a specialist or to have additional diagnostic testing on his shoulders. (Tr. 240-49.) On April 27, 2010, Dr. Moss testified that the plaintiff's shoulder pain affects his ability to "perform fine and gross movements;" to push, pull, grasp, and finger; "to carry out daily activities of living;" and to file papers in a cabinet above waist level since he is right handed. (Tr. 232-34.) The plaintiff relies on Dr. Moss's testimony to show that he meets

Listing 1.02B, but, as discussed *supra*, Dr. Moss's testimony is not supported by the record medical evidence or her own treatment notes since neither indicate that the plaintiff has a significant shoulder impairment.

The plaintiff testified that he collects cans by either putting the cans in bags himself or by having people save and put cans in bags for him (tr. 42-43), and that the "pulling sensation" starts in his back when he lifts his right arm up to "just about shoulder level." (Tr. 41.) Again the ability to lift a can and place it in a bag appears comparable in level of exertional difficulty to sorting, handling, or filing papers, and the ALJ even accounted for the plaintiff's inability to raise his right arm above shoulder level in his RFC determination. (Tr. 13.) Even assuming arguendo that the plaintiff suffered from a significant right shoulder impairment, Listing 1.02B requires him to have a significant impairment in "one major peripheral joint in each upper extremity," 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.02B, and the record medical evidence does not show that the plaintiff has a significant impairment in his left hand or his left upper extremity.[7]

The plaintiff contends that his thoracic spine injury, "specifically a *compression fracture at T-5* and *bone edema at T-1*," satisfied the requirements of Listing 1.02B because it is a "gross anatomical deformity." Docket Entry No. 7, at 13 (emphasis in original.) However, the record medical evidence does not show that the plaintiff suffered from a significant back impairment. Dr. Surber found that the plaintiff "had no gross asymmetry in any of his major muscle groups nor any evidence of muscle wasting;" "had bilaterally equal upper and lower limb strengths and grip strengths at 5/5;" had a limping gait but did not use an assistive device; and had no specific

---

[7] Although the plaintiff contends that he has "extreme loss of function" in both shoulders, *see* Docket Entry No. 7, at 13, the plaintiff testified that he does not have any difficulty "loading a bag with cans" as long as he uses his left arm. (Tr. 42-43.)

limitations regarding the functional mobility" of his neck or lower back. (Tr. 216-17.) Additionally, an MRI of the plaintiff's thoracic spine revealed an "[o]ld compression fracture of T5" and "[p]robable bone endema at T1; probably related to trauma," and of the plaintiff's lower back showed "[f]acet disease at 4-5 and 5-1" and "mild bulging of the disk at the 4-5 level" but "reveal[ed] no fracture or dislocation" and that "[t]he disk space appears normal." (Tr. 250-51.) The MRIs in March and April of 2010, indicate that the plaintiff's compression fracture was a result of an "old" injury[8] and that his back impairments were mild.

In sum, the record medical evidence does not show that the plaintiff suffered from significant impairments to both upper extremities, and thus he does not meet the requirements of Listing 1.02B.

### 3. The ALJ properly evaluated the plaintiff's subjective complaints of pain.

The plaintiff argues that the ALJ erred in evaluating the credibility of his subjective symptoms. Docket Entry No. 7, at 14-17. Specifically, he asserts that Dr. Moss's testimony and his own statements demonstrate that his impairments "cause him a considerable amount of pain." *Id.* at 16.

In evaluating the plaintiff's credibility, the ALJ noted that

the claimant's ability on consultative examination to perform a [sic] full squat and stand maneuvers even while complaining of some back pain. The record shows he

---

[8] Although it is not clear when such injury occurred, there is no evidence to suggest that the "old" compression fracture resulted in an emergence of pain or functional limitations and the plaintiff did not seek medical treatment for back pain until he first reported back pain to Dr. Moss in August of 2009. (Tr. 246.) Although on his previous visit to Dr. Moss in June of 2009, the plaintiff complained of knee, neck, right shoulder and right arm pain, as a result of a 1999 car accident (tr. 248), he did not mention suffering from back pain at that time and the record does not reflect that he received any treatment for back pain that could be attributed to a compression fracture before August of 2009.

is able to stand, walk and bend in a satisfactory manner. Further, he did not use any assistive device. His hips, knees, feet, and ankles were all palpably nontender. Neurologically, he had bilaterally equal upper and lower limb strengths and grip strengths were 5/5. He demonstrated that he could move easily from the chair to the examination table. He was able to perform the straightaway, tandem, and heel-toe walks. He had full and unlimited mobility in his right and left shoulder, elbows, hips, knees, ankles, wrist, hands and fingers including both thumbs. He was able to oppose his thumbs to his 2nd, 3rd, 4th, and 5th fingers and reveal no areas of decreased sensation to light touch involving his hands or feet. During all systems examination, by Dr. Surber, general observation revealed a well-developed, well-nourished, young, healthy-appearing Caucasian male who was alert and oriented times three. Dr. Surber noted the claimant has 20/25 vision with both eyes, but some decreased right eye pupillary constriction in response to light. He complained of shoulder pain since 1999 involving the right shoulder, but the area was palpably nontender during examination. Also, the record shows that he worked since 1999.

The claimant's hearing testimony and demeanor did little to enhance his overall credibility. He began by giving halting, and apparently guarded testimony as to his current living arrangement and/or financial support.[9] He complained of having blindness in his right eye, but such testimony appears inconsistent with the objective findings of visual acuity obtained by the consultative examiner. It is further noted that, notwithstanding his alleged "blindness" in the right eye, he recently drove a cab for several months, without any apparent visual difficulty. As recently as 2008, when seen by a consultative examiner and when displaying a significant capacity to function, the claimant was noted to be taking no prescribed medications. One can reasonably infer that his subsequent use of prescribed medication would have improved his ability to function to some degree at least, or else it would not be taken.[10]

* * *

In sum, the above residual functional capacity assessment is supported by the diagnostic imaging of only mild objective findings regarding his back. Further, his daily activities in collecting cans appears to require exertional activities even though

---

[9] Although the transcript does not (and perhaps cannot) reflect any "halting" testimony, the ALJ's probing questions about the type of relationships he had with friends with whom he lived with temporarily appears irrelevant and borders on being unnecessarily demeaning.

[10] It is not entirely clear to the Court what the ALJ meant by "or else it would not be taken." In any event, the Court agrees with the plaintiff, see Docket Entry No. 11, that the ALJ may have crossed the line in making medical assumptions with no evidence in the record to support such inferences.

he reported that his friends collect cans for him. He had no medical treatment at all 2004 until 2009, yet had relatively good jobs. The undersigned has considered the claimant's complaints of pain. Pain is necessarily a subjective symptom that is not objectively measurable, and it is recognized that there are many disorders in which the common symptom is constant, unremitting pain which is not responsive to therapeutic measures. Pain can be an important factor in causing functional loss. However, it can constitute disability for Social Security purposes only if it is not remediable, if it is of such degree as to preclude an individual from engaging in substantial gainful activity, and if it is associated with relevant abnormal findings. These factors are not of a significant degree as evidenced by this claimant's records. In this case, the medical evidence does not document a continuing impairment of incapacitating proportions, i.e., one which would produce pain of such intensity that the ordinary physical activity to perform basic work-related functions would be impossible or contraindicated for a continuous period of twelve months or more. The Administrative Law Judge does not imply that the claimant is symptom-free, but a review of the evidence in this case persuades the undersigned that the claimant's complaints of pain and incapacitation are not credible when viewed in light of the medical findings. The record does not show any referrals to a pain specialist. He is prescribed narcotic medication, but was taking no prescribed medication when seen in 2008 by the consultative examiner. While the claimant may experience some level of discomfort or other symptoms related to his diagnosed conditions, the record fails to support the degree of symptoms and functional limitations as alleged. The claimant's treatment has all been conservative in nature with no referrals for surgery or other aggressive measures. His clinical and diagnostic evidence fail to document any abnormality which could reasonably be expected to result in the degree of limitations alleged. Regulatory criteria require that impairments must be established by objective medical evidence consisting of signs, symptoms, and laboratory findings, not merely by a claimant's statement of symptoms. Moreover, a claimant's limited use of medication, failure to sustain any consistent medical regimen for treatment, lack of hospitalizations or emergency room visits, or other significant treatment constitute specific evidence which supports a conclusion that pain and other symptoms are not disabling. Further, the record shows inconsistencies regarding how his right eye was injured, whether work related or due to recreational activities, which brings his credibility into question.[11]

(Tr. 14-15) (Internal citations omitted).

The ALJ is charged with evaluating the credibility of the plaintiff at the hearing, and the ultimate decision of credibility rests with the ALJ. The ALJ's credibility finding is entitled to

---

[11] The ALJ did not specify these "inconsistencies" and it is not clear to the Court to what "inconsistencies" he was referring.

deference "because of the ALJ's unique opportunity to observe the claimant and judge [his] subjective complaints." *See Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (internal citations omitted). However, "[i]f the ALJ rejects the claimant's complaints as incredible, he must clearly state his reasons for doing so." *Wines v. Comm'r of Soc. Sec.*, 268 F. Supp.2d 954, 958 (N.D. Ohio 2003) (citing *Felisky*, 35 F.3d at 1036).

Social Security Ruling 96-7p emphasizes that credibility determinations must find support in the record, and not be based upon the "intangible or intuitive notion[s]" of the ALJ. 1996 WL 374186, at *4. In assessing the plaintiff's credibility, the ALJ must consider the record as a whole, including the plaintiff's complaints, lab findings, information provided by treating physicians, and other relevant evidence. *Id.* at *5. Consistency between the plaintiff's subjective complaints and the record evidence "tends to support the credibility of the claimant, while inconsistency, although not necessarily defeating, should have the opposite effect." *Kalmbach v. Comm'r of Soc. Sec.,* 2011 WL 63602, at *11 (6th Cir. Jan. 7, 2011). The ALJ must explain his credibility determination such that both the plaintiff and subsequent reviewers will know the weight given to the plaintiff's statements and the reason for that weight. Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4.

Both the SSA and the Sixth Circuit have enunciated guidelines for use in analyzing a plaintiff's subjective complaints of pain. See 20 C.F.R. § 404.1529; *Felisky*, 35 F.3d at 1037. While the inquiry into subjective complaints of pain must begin with the objective medical record, it does not end there. The Sixth Circuit in *Duncan v. Sec'y of Health and Human Servs.*, 801 F.2d 847 (6th Cir. 1986), set forth the basic standard for evaluating such claims.[12] The *Duncan* test has two

_____

[12] The defendant argues that the plaintiff cited the "wrong legal standard" by relying on *Duncan*. However, although *Duncan* only applied to determinations made prior to 1987, the Sixth Circuit has since held that *Duncan* continues to apply to determinations made after 1987. *See*

prongs. The first prong is whether there is objective medical evidence of an underlying medical condition. *Felisky*, 35 F.3d at 1039 (quoting *Duncan*, 801 F.2d at 853). The second prong has two parts: "(1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain." *Id.* This test does not require objective evidence of the pain itself. *Duncan*, 801 F.2d at 853 (quoting *Green v. Schweiker*, 749 F.2d 1066, 1071 (3rd Cir. 1984)).

In this case, the ALJ concluded that the plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," thus satisfying the first prong of the *Duncan* test. (Tr. 13.) Given that the second prong of the *Duncan* test consists of two alternatives, the plaintiff must only meet one of the following two elements: the objective medical evidence "confirms the severity of the alleged pain arising from the condition" or the "objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain." The ALJ cannot ignore a plaintiff's statements detailing the symptoms, persistence, or intensity of his pain simply because current objective medical evidence does not fully corroborate the plaintiff's statements. 20 C.F.R. § 404.1529(c)(2). Besides reviewing medical records to address the credibility of a plaintiff's symptoms of pain, an ALJ must review the entire case record in light of the seven factors set forth in 20 C.F.R. § 404.1529(c)(3).

---

*Felisky*, 35 F.3d at 1039 n.2. *See also McCormick v. Sec'y of Health and Human Servs.*, 861 F.2d 998, 1003 (6th Cir.1988) ("We hold that because the standards announced by this court in *Duncan* were authorized by § 404.1529 as well as by the Reform Act, they continue to apply to cases decided after the sunset of the Reform Act.").

In making his credibility determination, the ALJ relied on the medical evaluation from an examining source, objective medical testing, the plaintiff's testimony, and the plaintiff's lack of medical care and prescribed treatment. (Tr. 14-15)  Specifically, the ALJ discussed Dr. Surber's findings that showed the plaintiff's mobility was satisfactory, grip and limb strength were normal, vision was 20/25 in both eyes, and right shoulder was "palpably nontender." (Tr. 15, 214-17.)  He noted that 2010 MRIs of the plaintiff's thoracic spine and lower back did not reveal a significant abnormality that would support the severity of the plaintiff's allegations of pain (tr. 15, 250-51) and that his alleged right eye "blindness" was undercut by his testimony that he drove a cab for several months in 2007.[13] (Tr. 15, 28.)  Finally, the ALJ discussed the gap in the plaintiff's longitudinal medical care from 2004 to 2009, and pointed out that, even when the plaintiff was examined by physicians, his prescribed treatment was conservative and that, when he was evaluated by Dr. Surber in 2008, he was not taking any pain medication. (Tr. 16.)

In sum, the medical records from examining sources, objective diagnostic testing, lack of medical care, conservative medical treatment, and plaintiff's testimony demonstrate that his impairments cause him a certain amount of pain, but that same record evidence does not support his subjective complaints that his pain is disabling.

---

[13] In addition, the ALJ pointed to the lack of credibility in the plaintiff's testimony that he was blind in his right eye since the medical evidence contradicts that testimony. (Tr. 14.)  The plaintiff contends, however, that he did not testify that he was "completely blind" in his left eye. Docket Entry No. 7, at 15.  The plaintiff's apparent attempts to distinguish being "blind" from being "completely blind" are unpersuasive, particularly when counsel elicited the plaintiff's testimony himself. (Tr. 46.)

## V. RECOMMENDATION

For the above stated reasons, it is recommended that the plaintiff's motion for judgment on the administrative record (Docket Entry No. 6) be DENIED and that this action be DISMISSED.

Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of the Report and Recommendation to which objection is made. Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

_____
JULIET GRIFFIN
United States Magistrate Judge